UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ACHKEI WILSON, <br><br> Plaintiff, <br><br> v. <br><br> ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY, <br><br> Defendant. | Case No. 20-cv-06479 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Achkei Wilson brings claims in this employment discrimination action against his former employer the Illinois Department of Employment Security ("the Department"). He claims violations of the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. The Department moved for summary judgment on all claims. For the reasons stated below, the Department's motion for summary judgment [58] is granted.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the

1

adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255).

In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

"The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND[1]

Wilson was employed by the Department as a Veterans Employment Representative, primarily responsible for providing intensive services to eligible veterans. [66] ¶¶ 3, 5. Wilson was a member of the American Federation of State,

---

[1] The facts in this Background section are undisputed unless otherwise noted. This Court takes these facts from the Department's Statement of Facts [60, 62, 66], Wilson's Response to the Department's Statement of Facts [70, 72], Wilson's Statement of Additional Facts [70, 72], the Department's Response to Wilson's Statement of Additional Facts [80], and various exhibits the parties have submitted in connection with the Department's motion for summary judgment.

2

County, and Municipal Employees (the "Union") and was subject to the terms of the collective bargaining agreement ("CBA") between the Union and the Department. *Id.* ¶¶ 7–8.

Wilson reported to Eric Bermudez, the Assistant Statewide Veterans Program Manager, and Richard Wuthrich, the Statewide Veterans Program Manager. *Id.* ¶¶ 12–13. Wilson experienced conflicts with Bermudez and Wuthrich in 2018 after Wilson disagreed with and refused to follow orders by Bermudez. *Id.* ¶¶ 14, 17–18. In November 2018, Wilson's request to work under a different manager than Bermudez was denied. *Id.* ¶ 15. Effective February 1, 2019, Wilson was suspended without pay for one calendar day for failure to follow instructions, insubordinate behavior, and "disruptive," "threatening," "combative, obstructive, and unproductive" conduct in the workplace. *Id.* ¶¶ 16–17. Specifically, the suspension notice stated that Wilson's actions demonstrated his "continual failure to follow instructions and insubordinate behavior" and his "disrespectful behavior towards Bermudez and management in general is disconcerting." *Id.* ¶ 17.

On February 8, 2019, Wilson submitted a request to be reassigned to a field position outside of Bermudez's and Wuthrich's supervision as an accommodation, stating:

> The reason for this request is because I am currently experiencing bullying, unfair management practices and fear of my manager who has unfairly targeted me and unduly punished me for speaking up against his unethical directives to me. I have pleaded to management and the union for help. No one is listening. As a result, I have been marginalized and work in a toxic environment under current management. I am asking for help in being transferred to the vacant position until it becomes available to bid on at which I would be senior to be considered.

3

*Id.* ¶ 23.

On February 22, 2019, Wilson sent an email to his Union representative and three other Union officials, stating:

> I am trying my hardest to be calm and patient, but I have expressed very explicitly that if I have any contact with [Bermudez or Wuthrich,] I fear for my life and theirs. I am not mentally together and my health is declining. But no one is listening to me and I feel I am forced to take matters into my own hands if I am not removed from them. So I am burning my sick leave to avoid them, but they keep successfully threatening my pay and I'm not sure how much longer I will tolerate that. I will be seeing my VA doctor next Thursday who is aware of this crisis and will take the necessary steps to provide the information EEO needs to move me immediately. I am doing the best I can to wait until then. But with each threatening email from my managers drives me closer and closer to possible violence.

*Id.* ¶ 30. Effective February 28, 2019, Wilson was placed on a paid administrative leave of absence. *Id.* ¶ 33.

On March 20, 2019, in response to the February 8, 2019, request for accommodation, the Department approved Wilson's request for equipment but denied his request to be transferred on grounds that "[o]ffice assignments and locations are covered by the [Union] collective bargaining agreement and are according to seniority and other rights delineated in the [Union] contract." *Id.* ¶ 28.

On April 9, 2019, Wilson filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), alleging that beginning on December 26, 2018, the Department discriminated against him based on his disability by failing to provide a reasonable accommodation and by withholding wages from him. *Id.* ¶ 41.

On April 27, 2019, Dr. John Franklin conducted an independent medical, psychiatric examination of Plaintiff and concluded:

> I do not recommend the member returning to his recent employment and work situation. I do believe that a return to the exact situation with no changes might result in exacerbation of his stable symptoms at this point. . . . Due to this overall situation, I would not say he is fit to return to his current duties.

*Id.* ¶ 36. Dr. Franklin provided additional clarifications in an addendum:

> [Mr. Wilson] reported a series of events that led him to believe he is not being treated fairly at work. . . . [G]iven his continuing mistrust of the supervisors that he would need to work with closely if he returned to the same work situation, and, given his firm belief that nothing has changed; I had concerns for the possibility of a less than safe environment for him and others over time.

*Id.* ¶ 37.

Effective August 2, 2019, the Department placed Wilson on unpaid suspension pending discharge for Wilson's violation of the Department's policies concerning workplace violence and personal conduct. *Id.* ¶ 39. Effective August 14, 2019, the Department discharged Wilson for cause, stating, in relevant part: "The Department views threats of violence, whether it is verbal and/or physical, as a serious matter. In accordance with departmental policy, physical attacks, threats, intimidation, or harassment are expressly forbidden and will not be tolerated." *Id.* ¶ 40.

On August 16, 2019, the Union filed a grievance concerning Wilson's discharge. *Id.* ¶ 42. The grievance proceeded to an arbitration hearing. *Id.*

On November 20, 2019, Wilson filed an amended charge of discrimination, claiming discrimination based on disability and retaliation and adding allegations that he had "complained throughout [his] employment," had been suspended, and

5

was ultimately discharged on August 13, 2019. *Id.* ¶ 43. On August 18, 2020, the EEOC issued a Dismissal and Notice of Rights. *Id.* ¶ 44.

On May 20, 2021, the arbitrator presiding over the grievance issued an opinion and award in favor of the Department, noting: "Even if Grievant's threats of violence were a cry for help, the evidence sufficiently shows that his cry for help took the form of threats that were very seriously taken by his supervisors and cannot be justified so as to allow Grievant to be reinstated." *Id.* ¶ 46.

## ANALYSIS

### I. Failure to Accommodate

Wilson contends that the Department failed to accommodate his disabilities. *See Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1042 (7th Cir. 2020) ("Discrimination [under the ADA] can take the form of treating a disabled employee differently from other workers or failing to make reasonable accommodations to the known limitations of the employee."). To prevail on a failure to accommodate claim, a plaintiff must prove that "(1) [he] was a qualified individual with a disability, (2) [the employer] was aware of his disability, and (3) [the employer] failed to accommodate his disability reasonably." *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019).

The Department argues that (1) Wilson was not a qualified individual under the ADA and (2) the Department did not fail to reasonably accommodate any disability.

### A. Qualified Individual

The Department contends that Wilson is not a qualified individual under the ADA because he made threats of violence against his supervisors. [59] at 8–9. As an initial

6

matter, Wilson does not directly respond Defendant's argument. [69] at 8–9. Thus, Plaintiff has waived any argument that he is a qualified individual under the ADA. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *see also G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("The obligation to raise the relevant arguments rests squarely with the parties").

Even if waiver did not apply, the Court would find that Wilson is not a qualified individual under the ADA. The ADA "protects only 'qualified' employees, that is, employees qualified to do the job for which they were hired; and threatening other employees disqualifies one." *Palmer v. Cir. Ct. of Cook Cnty.*, 117 F.3d 351, 352 (7th Cir. 1997). To put it another way, "[t]he Act does not require an employer to retain a potentially violent employee." *Id.* Here, Wilson made threats of violence against his supervisors Bermudez and Wuthrich. [66] ¶ 30. In response, the Department discharged Wilson because it "view[ed] threats of violence . . . as a serious matter." *Id.* ¶ 40. Thus, Wilson is not a qualified individual under the ADA. *McRae v. Potter*, 46 F. App'x 371, 373–74 (7th Cir. 2002).

### B. Reasonable Accommodation

Even if the Court were to assume that Wilson is a qualified individual under the ADA, he cannot survive summary judgment because the Department did not fail to reasonably accommodate the reassignment request.

Wilson argues that the Department failed to engage in the interactive process. [9] 9–11. As an initial matter, "there is no independent cause of action for breakdown of

7

the interactive process under the ADA." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021). "Relevant to—and sometimes determinative of—the third element [of failure to make a reasonable accommodation] is the employer and employee's respective cooperation in an interactive process to determine a reasonable accommodation." *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 503 (7th Cir. 2020). Courts are directed to "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir.1996).

First, it is undisputed that the position Wilson sought was not available for bidding and subject to the CBA's seniority rules. [66] ¶ 23. "[E]mployers are not required to reassign a disabled employee to a position when such a transfer would violate a legitimate, nondiscriminatory policy of the employer." *King v. City of Madison*, 550 F.3d 598, 600 (7th Cir. 2008). "Nondiscriminatory hiring and reassignment provisions of a collective bargaining agreement qualify as such a policy." *Id.* The Department denied the reassignment because "[o]ffice assignments and locations are covered by the [CBA] and are according to seniority and other rights delineated [therein]." [66] ¶ 28. Therefore, the Department was under no obligation to reassign Wilson to this position. *See Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 291 (7th Cir. 2015) ("An employer may be obligated to reassign a disabled employee, but only to vacant positions[.]").

Second, it is undisputed that Wilson sought a reassignment "to get away" from Bermudez and Wuthrich. [66] ¶¶ 23, 27. The ADA does not require an employer to transfer an employee to the command of a different supervisor. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 526 (7th Cir. 1996). Thus, the Department had no obligation to grant Wilson's request for reassignment on that basis. *See id.* ("[Plaintiff] asks us to allow her to establish the conditions of her employment, most notably, who will supervise her. Nothing in the ADA allows this shift in responsibility.").

Finally, the record demonstrates that the Department attempted to process Wilson's accommodation request in good faith. *Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 786 (7th Cir. 2016) (Under the ADA, "both the employer and employee are responsible for engaging in an 'interactive process' to find a reasonable accommodation for the employee's disability"). The Department sought fitness of duty exams to clarify Wilson's medical restrictions. [66] ¶¶ 28, 36–37. Further, the Department continued discussions with Wilson *after* his threatening communications. *Id.* ¶¶ 30, 36–37. And as previously stated, the Department was not obligated to complete the accommodations process after Wilson's threatening communication. *McRae*, 46 F. App'x at 373–74 ("The Postal Service's statutory duty to reasonably accommodate [plaintiff] ended when [plaintiff] threatened his co-workers and superiors."). Because Wilson fails to show that there is any genuine issue of fact that he is a qualified individual under the ADA or that the Department failed to reasonably accommodate his disability, his failure to accommodate claim cannot

survive summary judgment. *See Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1042 (7th Cir. 2020) ("[Defendant] was entitled to summary judgment so long as [plaintiff] failed to present evidence sufficient to create a dispute of material fact on any essential (and contested) element of his claim as to which he bears the burden of proof.").

## II. Hostile Work Environment and Retaliation Claims

As an initial matter, district courts have broad discretion to enforce the local rules governing summary judgment motions, *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014), and the Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation omitted); *see also Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014). This Court agrees with Defendants that Wilson did not comply with Local Rule 56.1. [79] at 2–3. For example, Wilson uses lengthy sub-paragraphs with one additional material fact including eight separate lengthy paragraphs. *See, e.g.*, [70] ¶¶ 24–25; LR 56.1(b)(3).

Even setting that aside, the Court has reviewed Wilson's asserted facts as they relate to these claims and finds that Wilson does not "adduce affirmative evidence sufficient to support a jury's verdict in [his] favor." *Berkson v. Costco Wholesale Corp.*, No. 18-CV-2598, 2021 WL 83506, at *5 (N.D. Ill. Jan. 11, 2021).

### A. Hostile Work Environment[2]

A plaintiff may claim hostile work environment under both Title VII and the ADA. *See Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 852 (7th Cir. 2019). "A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 851 (cleaned up). To survive summary judgment, a plaintiff must provide evidence demonstrating that "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016).

Wilson does not argue that he was subject to a hostile work environment in retaliation for protected activity under the ADA. [69] at 11–14. Instead, Wilson asserts he engaged in protected activity under Title VII by making complaints about his superiors' work orders and conduct in general. *Id.*; [70] ¶¶ 24(i), 24(iii), 24(iv),

---

[2] The Department argues that Wilson's hostile work environment claim should be dismissed because Wilson failed to exhaust his administrative remedies. [59] at 5. "A Title VII plaintiff may bring only those claims that were included in [his] EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996). "The standard is a liberal one, reading the allegations of the EEOC charge broadly to take into account the fact that EEOC charges are often filed pro se." *Nickerson v. US Airways, Inc.*, No. 15 C 2970, 2016 WL 3563807, at *2 (N.D. Ill. July 1, 2016). Under this liberal standard, the Court finds that the hostile work environment claim grows out of Wilson's allegations that he "complained throughout [his] employment" and faced retaliation for engaging in protected activity.

11

24(v), 24(vi), 25 (iv), 25(v), 25(vi), 25(viii). But Wilson fails to connect any of these complaints to a protected class or protected activity. *See Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016) ("To be protected under Title VII, his complaint must have indicated the discrimination occurred because of sex, race, national origin, or some other protected class. . . . Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.") (cleaned up). These undeveloped and unsupported arguments are waived. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (conclusory and underdeveloped arguments are waived); *see also MBM Holdings LLC v. City of Glendale*, 843 F. App'x 5, 8 (7th Cir. 2021) ("It is the responsibility of the litigants to raise coherent legal claims, produce factual support, and develop reasoned arguments supported by citation to legal authority."). Thus, summary judgment is appropriate on the hostile work environment claim.

### B. Retaliation

To succeed on a retaliation claim, "a plaintiff must show that: 1) he engaged in statutorily protected activity; 2) he suffered an adverse action; and 3) there was a causal link between the two." *Pierri v. Medline Indus., Inc.*, 970 F.3d 803, 808 (7th Cir. 2020) (citation omitted). Like the hostile work environment claim, Wilson does not argue that Defendant retaliated against him for engaging in protected activity under the ADA. [69] at 14–15. Wilson again argues that his claim of retaliation is premised on "constant complaints about his supervisor and manager." [69] at 12. But

12

Wilson fails to explain how there is a causal connection between the purportedly protected activity and any adverse employment action. Again, these undeveloped and unsupported arguments are waived. *See Puffer*, 675 F.3d at 718 (7th Cir. 2012). In sum, Wilson has not "adduce[d] affirmative evidence sufficient to support a jury's verdict in [his] favor" on the retaliation claim. *See Berkson*, 2021 WL 83506, at *5.

### III. Section 1983, State Law, and Disability Harassment Claims

The Department argues that Wilson failed to respond to the Department's arguments on his claims under Section 1983 and Illinois state law and his claim for disability discrimination. [59] at 15; [79] 3–4. The Court agrees. *See* [69]. Therefore, Wilson has abandoned these claims. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) (where plaintiff failed to defend her claim against defendant's arguments on summary judgment, she abandoned that claim); *Barnes v. Nw. Repossession, LLC*, 210 F. Supp. 3d 954, 970 (N.D. Ill. 2016) (plaintiff's failure to respond to defendant's argument that it was entitled to summary judgment on claim meant that plaintiff conceded that summary judgment on that claim was warranted).

### CONCLUSION

For the stated reasons, Defendant's motion for summary judgment [58] is granted. The Clerk is directed to enter judgment in Defendant's favor and against Plaintiff and terminate the case.

E N T E R:

Dated: September 28, 2023

_____
MARY M. ROWLAND
United States District Judge

14